IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
AUG 3 1 2018
Clerk, U S District Court
District Of Montana
Billings

ALYSHA ROSEKELLY,

Plaintiff,

vs.

TESSENDERLO KERLEY, INC.,

Defendant.

CV 16-176-BLG-SPW

ORDER

Before the Court are United States Magistrate Judge Timothy Cavan's findings and recommendation filed June 25, 2018. (Doc. 26). Judge Cavan recommends this Court grant Defendant Tessenderlo Kerley's motion for summary judgment on Plaintiff Alysha Rosekelly's wrongful discharge claim. (Doc. 26 at 32).

I. **Standard of review**

Rosekelly filed timely objections to the findings and recommendation. (Doc. 27). Rosekelly is entitled to de novo review of those portions of Judge Cavan's findings and recommendation to which she properly objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

1

a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. Rosekelly's objections

Rosekelly argues disputed facts preclude summary judgment on the issues of good cause, pretext, and retaliation.

## III. Discussion

Montana's Wrongful Discharge from Employment Act (WDEA) makes it illegal for employers to wrongfully discharge employees. A discharge is wrongful if, among other things, (1) it is done in retaliation for the employee's refusal to

violate public policy or for reporting public policy violations or (2) it is not for good cause. Mont Code Ann. § 39-2-904(1)(a-b).

## A. Good cause

Good cause means "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Mont. Code. Ann. § 39-2-903(5). A legitimate business reason is a reason that has some logical relationship to the needs of the business and is not false, whimsical, arbitrary, or capricious. *Reinlasoder v. City of Colstrip*, 376 P.3d 110, 113 (Mont. 2016) (citing *Davis v. State*, 357 P.3d 320, 322 (Mont. 2015)). To prove a discharge was wrongful, the employee may show either that the given reason is not good cause, or that the given reason is a pretext and not the honest reason for the discharge. *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, 441 (Mont. 2008) (citation omitted).

The Montana Supreme Court has stressed the importance of the "right of an employer to exercise discretion over who it will employ and keep in employment." *Reinlasoder*, 376 P.3d at 113. However, the balance between the employer's discretion and "the employee's equally legitimate right to secure employment . . . should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his

3

termination were false, arbitrary or capricious, and unrelated to the needs of the business." *Reinlasoder*, 376 P.3d at 113.

Tessenderlo stated it discharged Rosekelly because she made mistakes in inventory and had periodic attendance issues. (Doc. 26 at 15-16). Rosekelly argued the good cause standard was not met because disputed facts existed regarding whether she was satisfactorily performing her inventory duty. (Doc. 26 at 21). Judge Cavan concluded Tessenderlo had good cause to discharge Rosekelly as a matter of law because it was undisputed Rosekelly made inventory mistakes in 2012, 2013, 2014, 2015, and 2016. (Doc. 26 at 22).

Rosekelly objects to Judge Cavan's conclusion. Rosekelly argues her mistakes in inventory do not constitute good cause and points to evidence that shows she was performing her inventory duties satisfactorily. The Court agrees with Rosekelly.

Rosekelly was fired in October 2016. (Doc. 26 at 15). Judge Cavan is correct that Rosekelly made inventory mistakes in 2012, 2013, 2014, 2015, and 2016. However, in the latter years of the same period, from 2014-2016, Rosekelly received positive performance reviews regarding inventory.

In her February 2014 annual performance review, Rosekelly received a "Meets Expectations" rating in all categories and was awarded a merit bonus. (Doc. 21-13 at 1-3). With regard to inventory, the 2014 review stated Rosekelly's

4

"problem solving skills involving inventory and rail management continue to develop at a good pace," she had a "drastic reduction in mistakes," she "made good progress becoming more precise at inventory and ensuring the plant inventory and SAP inventory match," "[a]ny mistakes or issues that [Rosekelly] may come across, she adeptly utilizes her problem solving skills and uses Phoenix to help her correct the issue – which is great!" and she "did a great job working at 5 AM on new year's day for year-end inventory." (Doc. 21-3 at 1-3). With regard to attendance, the 2014 review stated Rosekelly "is punctual and has been coached on managing her sick leave and vacation time, which has improved," and she "continues to be available for the newly hired C Operators when needed to stay late or come in on her weekend to complete shipping paperwork." (Doc. 21-13 at 2).

In her March 2016 annual performance review, Rosekelly received a "Meets Expectation" rating in four out of five categories and was awarded a merit bonus. (Doc. 21-9 at 1-4). The only category she received a "Requires Improvement" rating in was interpersonal skills, due to her involvement in office politics and gossip. (21-9 at 2). Rosekelly's interpersonal skills were not cited as a reason for her discharge. With regard to inventory, the 2016 review stated Rosekelly was "competent in the understanding of her job, her inventory responsibilities and the importance of her roles needed to manage the front office," her "problem solving

5

skills involving inventory and rail management continue to develop," and she understood "the precision needed during inventory calculations while ensuring the plant inventory and SAP inventories match." (Doc. 21-9 at 1-4). With regard to attendance, the 2016 review stated Rosekelly is "punctual and has been coached on managing her sick leave and vacation time," and she "continues to be available for the newly hired C Operators when needed to stay late or come in on her weekend to complete shipping paperwork." (Doc. 21-9 at 2).

Based on her performance reviews, the Court holds Rosekelly has come forward with sufficient evidence, and not mere speculation, upon which a jury could determine she was satisfactorily performing her job duties regarding inventory and attendance. Mont. Code. Ann. § 39-2-903(5); *Reinlasoder*, 376 P.3d at 113. For example, based on the contemporaneous mistakes, positive performance reviews regarding inventory, and merit bonuses, a jury could find that Rosekelly's inventory mistakes were not detrimental to the business, that Rosekelly kept her mistakes to an acceptable level attributable to human error, and/or that Tessenderlo overstates the extent or importance of the mistakes. Even though Rosekelly committed inventory mistakes after her 2016 review, a jury could find terminating Rosekelly for those post-review mistakes was arbitrary or capricious given that the mistakes were of a similar nature to past years' mistakes, which did not result in negative performance reviews for Rosekelly. Similarly,

based on the performance reviews regarding attendance, a jury could find Rosekelly's attendance was acceptable.

Tessenderlo asserts an employer may terminate an employee for good cause even where the employee has received favorable performance evaluations, citing *Baumgart v. State, Dept. of Commerce*, 332 P.3d 225, 230-233 (Mont. 2014). The Court agrees that as a general proposition, a positive performance evaluation does not give an employee carte blanche. For instance, Rosekelly's generally positive performance reviews would not protect her from discharge were she to sexually harass another employee. *See Reinlasoder*, 376 P.3d at 114. But a positive performance evaluation may create a disputed issue of fact when, as here, the performance evaluation directly conflicts with the reasons cited for the discharge. Tessenderlo's cited reasons for the discharge were inventory mistakes and attendance issues. Rosekelly's performance evaluations state her performance regarding inventory and attendance were satisfactory. Satisfactory performance, or the absence of it, is one of the standards used to determine good cause. Mont. Code. Ann. § 39-2-903(5) ("[F]ailure to satisfactorily perform job duties . . . ).

In sum, although it's undisputed Rosekelly made inventory mistakes, the materiality of her mistakes is in dispute, which precludes summary judgment. Because the Court finds Rosekelly has presented sufficient evidence upon which a jury could find Tessenderlo's stated reasons do not constitute good cause, a

7

discussion of pretext is unnecessary. *See Marcy v. Delta Airlines*, 166 F.3d 1279, 1287 (9th Cir. 1999) (discussion of pretext is unnecessary when employee offers sufficient evidence that employer's reason does not constitute good cause) (citing *Cecil v. Cardinal Drilling Co.*, 797 P.2d 232, 234 (Mont. 1990)).

**B.     Retaliation**

The WDEA's retaliatory discharge provision protects employees who take steps in their employment to promote the enforcement of laws and regulations. *Fenno v. Mountain West Bank*, 192 P.3d 224, 230 (Mont. 2008). The retaliatory provision provides that a termination is wrongful if it was in retaliation for the employee's report of a public policy violation. Mont. Code Ann. § 39-2-904(1)(a). "Public policy" means a "policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule." Mont. Code Ann. § 39-2-903(7).

To sufficiently allege a retaliation claim, an employee must come forward with evidence that shows (1) the employee's refusal to violate public policy or the employee's report of a public policy violation, (2) the constitutional provision, statute, or administrative rule violated, and (3) the discharge was in retaliation for the refusal or the report. There is no requirement the employee make the report to any entity in particular. Mont. Code Ann. § 39-2-904(1)(a). A report to the employer is sufficient. *Fenno*, 192 P.3d at 228. There is likewise no requirement

8

the report result in a citation or official investigation. *Motarie v. Northern Montana Joint Refuse Disposal Dist.*, 902 P.2d 154, 157 (Mont. 1995). A report made in good faith is sufficient. *Motarie*, 902 P.2d at 157.

Rosekelly argued Tessenderlo fired her because of her reports of her supervisor's behavior. Tessenderlo responded that the last report was five months prior to her discharge, and therefore too attenuated. Judge Cavan held five months was too long to infer causation without other evidence. Rosekelly objects to Judge Cavan's finding, arguing a jury could infer causation. The Court agrees with Judge Cavan.

There is no bright line to measure temporal proximity, as the various cases cited by Judge Cavan and the parties demonstrate. *Compare Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (4 months too long) *and Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (5 months too long) *with Bernhardt v. Interbank of N.Y.*, 18 F.Supp.2d 218 (E.D.N.Y. 2008) (11 months was sufficient to infer causation) *and US EEOC v. Placer ARC*, 114 F.Supp.3d 1048 (E.D. Cal. 2015) (8 months was sufficient to infer causation). Instead, courts must consider the temporal proximity and the specific facts and circumstances of each case to determine whether a jury could fairly infer causation. *Farrerell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3rd Cir. 2008).

Here, Rosekelly's last formal complaint about her supervisor was May 2014. (Doc. 26 at 30). Her next, and last, complaint, which was really more of an informal comment, occurred in May 2016, five months prior to her termination. (Doc. 26 at 30-32). Other than the fact the complaint was made, Rosekelly has presented no evidence that links the informal complaint to her termination. (Doc. 26 at 30-32). Without some evidence, whether direct or circumstantial, furnishing the necessary links in the causal chain to fill in at least part of the five month gap, the Court agrees with Judge Cavan that Rosekelly's retaliation claim fails as a matter of law.

IV. **Conclusion and order**

1. The Court adopts in part and rejects in part Judge Cavan's findings and recommendation.

2. Tessenderlo's motion for summary judgment is denied with respect to good cause and pretext and granted with respect to retaliation.

DATED this 30th day of August, 2018.

SUSAN P. WATTERS
United States District Judge